IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>WOODBRIDGE GROUP OF COMPANIES,<br>LLC, *et al.*, | : <br> : <br> : <br> : | Chapter 11<br>Bankr. Case No. 17-12560-BLS<br>(Jointly Administered) |
| Debtors. | : <br> : | |
| CONTRARIAN FUNDS, LLC, | : <br> : | |
| Appellant,<br>v. | : <br> : <br> : | Civ. No. 18-996-LPS |
| WOODBRIDGE GROUP OF COMPANIES,<br>LLC, *et al.*, | : <br> : <br> : <br> : | |
| Appellees. | : | |

**<u>MEMORANDUM</u>**

**I.     INTRODUCTION**

Pending before the Court is an appeal (D.I. 1) by Contrarian Funds, LLC ("Contrarian") from the Bankruptcy Court's June 20, 2018 Opinion, *In re Woodbridge Group of Companies, LLC,* 590 B.R. 99 (Bankr. D. Del. 2018), and related Order (B.D.I. 2016)[1] (together, the "Decision"), issued by the Honorable Kevin J. Carey in the above-captioned chapter 11 cases.[2] The Decision sustained the Debtors' objection (B.D.I. 1563) (A161-96) ("Claim Objection") to a proof of claim filed by Contrarian. For the reasons that follow, the Court will affirm the Decision.

---

[1] The docket of the Chapter 11 cases, captioned *In re Woodbridge Group of Companies, LLC, et al.,* Case No. 17-12560-BLS (Bankr. D. Del.), is cited herein at "B.D.I. __." Contrarian's appendix in support of its opening brief (D.I. 14) is cited herein as "App. __," and Appellees' supplemental appendix in support of its answering brief (D.I. 17) is cited herein as "SA__."

[2] A list of the Debtors is attached to Appellees' answering brief. (*See* D.I. 16-1) By Order dated April 11, 2019 (B.D.I. 3589), these Chapter 11 cases were reassigned to the Honorable Brendan L. Shannon.

## II. BACKGROUND

### A. Chapter 11 Cases

On December 4, 2017, hundreds of the Debtors filed for bankruptcy under Chapter 11, with additional affiliated Debtors filing in the following months. Prior to bankruptcy, the Debtors were controlled by Robert Shapiro and were used by him to perpetrate a Ponzi scheme. (App. 11, 367) Pursuant to a settlement by and among the Debtors, the Securities and Exchange Commission, the Official Committee of Unsecured Creditors, and two ad hoc investor committees, Shapiro was divested of control over the Debtors and a new, independent board and management team were installed. (*See* SA7) On October 26, 2018, the Debtors confirmed their Plan of Liquidation. (B.D.I. 2903)

### B. The Notes

Prior to the bankruptcy, in 2016 and 2017, Debtor Woodbridge Mortgage Investment Fund 3A, LLC (the "Fund") had issued three promissory notes (collectively, the "Notes") to Elissa and Joseph Berlinger in the principal amount of $25,000 each. (App. 282–92) Each Note stated that it would bear interest at annual rates of between 6.75% and 7.25%. (App. 248, 256, 264) Each Note contains the following anti-assignment clause:

> No Assignment. Neither this Note, the Loan Agreement of even date herewith between [the Fund] and [the Berlingers], nor all other instruments executed or to be executed in connection therewith (collectively, the 'Collateral Assignment Documents') are assignable by [the Berlingers] without the [Fund's] written consent and any such attempted assignment without such consent shall be null and void.

(App. 284, 288, 292) In connection with each Note, the Berlingers and the Fund executed a Loan Agreement (collectively, the "Loan Agreements"). (App. 251-54, 259-62, 267-70) Section 4(d) of each Loan Agreement also contains an anti-assignment clause:

2

> This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that the [Berlingers] shall not assign, voluntarily, by operation of law or otherwise, any of [their] rights hereunder without the prior written consent of [the Fund] and any such attempted assignment without such consent shall be null and void[.]

(App. 253, 261, 269) The Notes and Loan Agreements contain materially identical terms and are governed by Delaware law. (App. 250 ¶ 13, 258 ¶ 13, 266 ¶ 13) The Debtors do not contest that they are in breach of their obligations to pay principal and interest on the Notes. (App. 215-17)

Notwithstanding the anti-assignment provisions in the Notes and Loan Agreements, on February 13, 2018, the Berlingers and Contrarian executed the *Evidence of Transfer of Claim* (the "Transfer Notice") pursuant to which the Berlingers purportedly "sold, transferred, and assigned" to Contrarian all of their "right, title and interest in and to the [Berlingers'] claim in the amount of $75,000 . . . against the [Fund]." (App. 281) Contrarian and the Berlingers also entered into a *Transfer of Claim Agreement* dated as of February 13, 2018 (the "Transfer of Claim Agreement"), pursuant to which the Berlingers purportedly agreed to "sell, convey, transfer and assign" to Contrarian, *inter alia*, "all causes of action held by [the Berlingers]" in connection with the transferred documents and the transferred claims. (App. 272) The Debtors did not consent and have not consented to the transfer of the Berlingers' Notes to Contrarian. (App. 178)

### C. Contrarian's Claim and Debtors' Claim Objection

On March 1, 2018, Contrarian filed Proof of Claim No. 1216 (the "Claim"), asserting a secured claim against the Fund in the amount of $75,000. (App. 277-93) The Claim attached the Transfer Notice, together with copies of the Notes. (*Id.*) As the basis for its claim Contrarian stated: "PROMISSORY NOTES." (App. 278)

On April 16, 2018, the Debtors filed the Claim Objection with respect to Contrarian's Claim. (App. 161) The Debtors asserted, *inter alia*, that because the Debtors did not consent to the assignment to Contrarian, the putative assignment reflected in the Transfer Notice is unenforceable against the Debtors and, thus, the Claim must be disallowed pursuant to Bankruptcy Code section 502(b)(1). (App. 166) In its response to the Claim Objection, Contrarian argued that the anti-assignment provisions are unenforceable under Delaware law, that the Debtors' breach of the Notes and Loan Agreements renders the clauses unenforceable, and that section 9-408(a) of the UCC overrides the anti-assignment provisions. (App. 227-43)

**D.     The Decision**

Following a thorough analysis, the Bankruptcy Court rejected each of Contrarian's arguments and sustained the Claim Objection without prejudice to the right of the Berlingers to file a proof of claim in respect of the Notes. *See Woodbridge*, 590 B.R. at 109. (B.D.I. 2014, 2016) The Bankruptcy Court determined that, under Delaware law, the anti-assignment provisions had the effect of rendering the Berlingers' purported assignment to Contrarian void and of no effect. *See id.* at 102-05. The Bankruptcy Court further concluded that the Debtors' breach of the Notes did not prevent them from enforcing the anti-assignment provisions. *See id.* at 105-07. Finally, the Bankruptcy Court rejected Contrarian's argument that the UCC provision cited by Contrarian restricted assignment of the Notes, concluding that the provision prohibits only restrictions on assignments of security interests in promissory notes, not restrictions on assignment of promissory notes themselves. *See id.* at 107-09.

Contrarian timely appealed the Decision. (D.I. 1) The merits of the appeal are fully briefed. (D.I. 13, 14, 16, 17, 18) The Court did not hear oral argument because the facts and

legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992). The parties agree that the issues presented here are questions of law, requiring *de novo* review. *See Am. Flint Glass,* 197 F.3d at 80; *In re KiOR, Inc.,* 567 B.R. 451, 457 (D. Del. 2017) (stating district court reviews bankruptcy court's conclusions of law *de novo*). (*See* D.I. 13 at 2; D.I. 16 at 3)

## IV. DISCUSSION

### A. The Anti-Assignment Provisions Are Enforceable Under Delaware Law

Contrarian argued below, and again in its opening brief, that the "policy of free assignability" set out in Rule 3001(e) of the Federal Rules of Bankruptcy Procedure supports overruling the Claim Objection. (D.I. 13 at 15) The Bankruptcy Court correctly observed that Rule 3001(e) merely "recognizes that claims trading occurs and provides for certain procedures governing such transfers." *Woodbridge,* 590 B.R. at 103. While noting that the modern claims trading industry "is robust and fruitful, allowing for, among others, liquidity for noteholders on

5

the one hand and profitability for traders on the other," Judge Carey observed, "I am aware of no provision in the Bankruptcy Code or of any overarching bankruptcy policy which impairs the Court's authority to determine and enforce applicable non-bankruptcy law concerning contract provisions which may restrict transfers of claims." *Woodbridge*, 590 B.R. at 103. "Neither am I convinced – and the record does not support – any [basis to believe] that to sustain the Claim Objection would cause disruption in the claims trading market." *Id.*

Judge Carey noted that "[w]hile Delaware courts recognize the validity of clauses limiting a party's ability to subsequently assign its rights," they "construe such provisions narrowly because of the importance of free assignability." Citing *Southeastern Chester Cty. Refuse Authority v. BFI Waste Servs. of Penn, LLC*, 2017 WL 2799160 (Del. Super. Ct. June 27, 2017), a case relied upon by both parties, Judge Carey explained that the modern approach to assignment clauses "is to distinguish between the ***power*** to assign and the ***right*** to assign." *Id.* at 103. As the *Southeastern* court explained:

> When a provision restricts a party's power to assign, it renders any assignment void. However, in order for a court to find that a contract's clause prohibits the power to assign, there must be express language that any subsequent assignment will be void or invalid. Without such express language, the contract merely restricts the right to assign. When a contract limits a party's right to assign instead of the power to do so, the assignment is valid and enforceable but generates a breach of contract action that the non-assigning party may bring against the party assigning its interest.

*Woodbridge*, 590 B.R. at 103-04 (quoting *Southeastern*, 2017 WL 2799160, at *5). Because the purchase agreement's anti-assignment clause in *Southeastern* did not contain language providing that any assignment would be void, the *Southeastern* court found that clause merely restricted the ***right*** to assign but not the ***power*** to assign. *See Southeastern*, 2017 WL 2799160, at *6. Accordingly, the assignment of such agreement constituted a breach of contract but was not void; it remained an enforceable assignment. *See id.* Here, by contrast, each Note contains clear

6

language that the Note is not assignable without the Fund's written consent, "and any such attempted assignment without such consent shall be null and void." (App. 284, 288, 292)

On appeal, Contrarian argues that the Bankruptcy Court failed to construe the anti-assignment provisions narrowly and misconstrued Contrarian's argument that it took not only assignment of the Notes but also assignment of the Berlingers' "claims, causes of action, and rights to payment." (D.I. 13 at 14-19) According to Contrarian:

> The Transfer of Claim Agreement expressly assigns Contrarian the Berlingers' claims and causes of action under the Notes and the Loan Agreements. By their terms, the Anti-Assignment Clauses purport to restrict only the assignment of "the Note," the "Loan Agreement," "other instruments" and "rights" under the Loan Agreement. They contain no language barring the assignment of "claims" or "causes of action" for damages.

(*Id.* at 16) In support, Contrarian cites *Zazzali v. Alexander Partners LLC,* 2016 WL 10537011, *1 (D. Idaho July 26, 2016). In *Zazzali,* the court rejected an argument that a litigation trust lacked standing to pursue securities claims that had been assigned to it under a plan of reorganization despite a subscription plan that had contained an anti-assignment provision. In upholding the assignment, the *Zazzali* court relied on Restatement (Second) of Contracts section 322(1), which states: "Unless the circumstances indicate to the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." In *Zazzali,* the court held, "There [has been] no showing . . . that the anti-assignment clause here bars the assignment of claims," as opposed to assignment of the contract itself. *Id.* at * 7.

Contrarian argues that the anti-assignment clause in the Loan Agreements restricts only the assignment of the Berlingers' "rights" under the agreement and not their "claims." (*See* App. 253 ¶ 4(d); App. 261 ¶ 4(d); App. 269 ¶ 4(d)) According to Contrarian, the Loan Agreement does not mention the Berlingers' "claims" or manifest any intent to prevent the transfer of those

7

claims. Thus, pursuant to Section 322(1) of the Restatement, the anti-assignment provisions do not bar Contrarian's Claim.[3]

As the Bankruptcy Court correctly observed, the Comment to Section 322 of the Restatement clarifies that it is not the purpose of the section to invalidate all anti-assignment provisions. It merely requires, like Delaware law, that they be unambiguous. *See Woodbridge*, 590 B.R. at 104-05 (quoting Restatement § 322, Comment a.). As the anti-assignment provisions in the Notes and the Loan Agreements are unambiguous, the Restatement supports enforcing them as written.

Section 322(2) of the Restatement provides (emphasis added):

> A contract term prohibiting assignment of rights under the contract, **unless a different intention is manifested** . . . does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation.

As the Bankruptcy Court correctly observed, the anti-assignment provision here cross-references the Loan Agreement, and under § 4(d) of the Loan Agreement, the Berlingers were prohibited from assigning "any of [their] rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void." *Woodbridge*, 590 B.R. at 105. Thus, "the language of both the anti-assignment clause [in the Notes] and the

---

[3] The Bankruptcy Court distinguished Section 322(1) of the Restatement based, in part, on the observation that "the Reporter's Note to § 322 of the Restatement provides that subsection (1), which is new, is based upon UCC 2-210(3), which applies to contracts for the sale of goods. . . . The term "Goods" [as defined in the UCC] does not include instruments." *Woodbridge,* 590 B.R. at 104 (citing UCC § 9-102(a)(65) (defining "Promissory Note" as "an *instrument* that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum or money or funds") (emphasis added); UCC § 9-102(a)(44) (defining "Goods")). Contrarian argues that nothing in the text of Section 322(1) limits its application to sales of goods. (D.I. 13 at 17-18) The Court agrees with the Bankruptcy Court's conclusion that Section 322(1) has no application to a purported assignment of a promissory note or causes of action arising thereunder.

8

Loan Agreement manifests both a clear intention to forbid the assignment of the Promissory Note itself and *any rights thereunder*." *Id.* (emphasis added). Accordingly, the contracts fall within the "unless a different intention manifested" proviso in section 322(2), rendering any assignment of "claims" or "causes of action" under the Notes and Loan Agreements null and void. Consistent with Delaware law, the anti-assignment provisions here are clear and unambiguous. They expressly provide that any purported assignment of the Notes, the Loan Agreements, or any rights thereunder absent the Debtors' consent is null and void – thereby disabling the *power* to assign, rather than merely contractually barring the *right* to assign.

The Court further agrees with the Bankruptcy Court that, due to the clear and unambiguous restriction on the rights underlying the Promissory Notes, Contrarian's case law regarding the "assignment of claims" is inapposite. (*See, e.g.*, D.I. 13 at 18) (discussing *Avery Outdoors LLC v. Outdoors Acquisition Co.*, 2016 WL 8738242, at *1 (W.D. Tenn. Dec. 6, 2016)) Contrarian's attempt to sidestep the anti-assignment provisions by arguing that Contrarian merely took assignment of "claims" and "causes of action" under the Notes and Loan Agreements is unsupported by Contrarian's own proof of claim, the language of the relevant documents, and the case law.

**B.      The Debtors' Breach Does Not Vitiate the Anti-Assignment Provisions**

Contrarian next argues that even if the anti-assignment provisions are valid under Delaware law, the "Debtors' breach of their obligations to pay principal and interest on the Notes barred them from enforcing the Anti-Assignment Clauses." (D.I. 13 at 19) To Contrarian, "while anti-assignment provisions may be enforced pre-breach, once a breach has occurred, they do not bar the assignment of claims." *Id.* Debtors counter that the Bankruptcy Court correctly rejected Contrarian's argument, given that Contrarian's proof of claim is an attempt to collect on

9

(rather than repudiate) the Notes. (*See* D.I. 16 at 16-21) In the view of Debtors, Contrarian cannot simultaneously seek to enforce the Notes through its proof of claim while treating the Berlingers' obligations under the contract as terminated.

As the Bankruptcy Court noted, it is "axiomatic" that the Debtors' breach does not permit the Berlingers to "emerge post-breach with more rights than [they] had pre-breach" (i.e., assignment rights with respect to the Notes, the Loan Agreement, or any rights arising thereunder, which they lacked pre-breach). *Woodbridge*, 590 B.R. at 106 (citing, e.g., *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992); *In re Diamondhead Casino Corp.*, 2016 WL 3284674, at *15 (Bankr. D. Del. June 7, 2016) (rejecting as "untenable" creditors' argument that debtor's failure to pay note meant debtor could not enforce note's anti-assignment provision)).

Contrarian addresses *Diamondhead* only to state that it is not controlling. (*See* D.I. 13 at 23-24) Other cases relied on by Contrarian are distinguishable or inapposite. *See TAP Holdings, LLC v. ORIX Fin. Corp.*, 2014 WL 6485980, at *5 (N.Y. Sup. Ct. Nov. 20, 2014) (refusing to enforce anti-assignment language where there was "no provision that assignments made in contravention thereof . . . should be void or result in no acquisition of rights by reason of such assignment"); *Hipcricket, Inc. v. mGage LLC*, 2016 WL 3910837 (Del. Ch. July 15, 2016) (refusing to enforce non-compete in employment agreement rejected by debtor in bankruptcy, where former employee had pre-agreement right to compete; unlike here, where no pre-Note right to assign Notes without Debtors' consent existed).[4]

---

[4] Still other cases cited by Contrarian are inapplicable because they rely upon the *per se* alienability of post-loss benefits under insurance contracts, a special circumstance not present here. (*See* D.I. 13 at 20 n.8) (citing *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, 2015 WL 6675537, at *4 (D. Del. Nov. 2, 2015); *DW Last Call Onshore, LLC v. Fun Eats & Drinks LLC*, 2018 WL 1470591, at *3 (S.D.N.Y. Mar. 23, 2018); *Allied Irish Banks, P.L.C. v.*

10

## C. The UCC Does Not Render the Anti-Assignment Provisions Unenforceable

Contrarian also argues that the UCC renders the anti-assignment clauses unenforceable: "Section 9-408 of the UCC invalidates a contractual provision that requires the consent of the maker of a promissory note before the note may be transferred." (D.I. 13 at 8) Debtors contend that the Bankruptcy Court correctly reasoned that section 9-408(a) of the UCC applies only to transactions that grant a security interest in a promissory note, not to outright sales of promissory notes. (*See* D.I. 16 at 21-26) Debtors add that Contrarian lacks standing to enforce the Notes. (*See id.* at 26-29) The Court agrees with the Bankruptcy Court.

Section 9-408(a) of the UCC provides:

> Except as otherwise provided in subsection (b), a term in a promissory note [that] prohibits, restricts, or requires the consent of the person obligated on the promissory notes . . . to the assignment or transfer of, or creation, attachment, or perfection of a security interest in, the promissory note . . . is ineffective to the extent that the term:
>
> > (1) would impair the creation, attachment, or perfection of a security interest; or
> >
> > (2) provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note . . . .

DEL. CODE ANN. tit. 6, § 9-408(a). Section 9-408(b), in turn, limits the scope of section 9-408(a): "Subsection (a) applies to a security interest in a payment intangible or promissory note . . . only if the security interest arises out of a sale of the payment intangible or promissory note . . . ." *Id.* § 9-408(b).

---

*Bank of Am.*, 2006 WL 278138, at *5 (S.D.N.Y. Feb. 2, 2006); *accord Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 171 (2d Cir. 2006) (acknowledging "the general rule permitting transfer of a cause of action notwithstanding a 'no-transfer' clause in an insurance policy"))

11

Contrarian argues that the purchase of a promissory note is always a "security interest" within the meaning of UCC Section 1-201(b)(35).[5] (*See* D.I. 13 at 9) ("Section 1-201, in turn, expressly defines 'security interest' to include '*any* interest of . . . a *buyer* of . . . a promissory note in a transaction that is subject to Article 9.'") (citing § 1-201(b)(35)) (emphasis added) The Court disagrees. The UCC definition of "security interest" has two sentences: the first states what the term 'security interest' "means," and the second what the term may "include," depending on the circumstances and context. *See* DEL. CODE ANN. tit. 6, § 1-201(b)(35). What the term "security interest" "means" is "an interest in personal property or fixtures which secures payment or performance of an obligation." *Id.* As the Bankruptcy Court observed in its thorough UCC analysis, the question of whether a particular transaction should be classified as an outright sale or a transaction creating a security interest is an "issue [that] is left to the courts." *Woodbridge*, 590 B.R. at 108 (quoting Official Comment 4 to UCC § 9-109). "If, as Contrarian assumes, the drafters of the UCC intended for there to be a bright line rule, classifying all sales

---

[5] Section 1-201(b)(35) provides in full:

> "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9. "Security interest" does not include the special property interest of a buyer of goods on identification of those goods to a contract for sale under § 2-401, but a buyer may also acquire a "security interest" by complying with Article 9. Except as otherwise provided in § 2-505, the right of a seller or lessor of goods under Article 2 or 2A to retain or acquire possession of the goods is not a "security interest", but a seller or lessor may also acquire a "security interest" by complying with Article 9. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under § 2-401 is limited in effect to a reservation of a "security interest." Whether a transaction in the form of a lease creates a "security interest" is determined pursuant to § 1-203.

UCC Section 1-201(b)(35).

of promissory notes as security interests, the courts would have nothing to decide; courts would simply apply the rule and move on." *Id.*

Here, the Bankruptcy Court correctly determined that Section 9-408(a) does not apply because Contrarian does not hold any security interest in the Notes. Contrarian did not lend money to the Berlingers – and, therefore, also did not lend any money for which the repayment obligation is secured by the Berlingers' interest in the Notes.

As the Bankruptcy Court stated, an additional problem with "reading § 9-408 as Contrarian desires" is that it "would render § 9-406 superfluous," *Woodbridge*, 590 B.R. at 109, which would violate a fundamental rule of statutory construction, *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). Section 9-406 specifically provides (and has as part of its title) that "restrictions on assignment of accounts, chattel paper, payment intangibles, and promissory notes [are] ineffective." Section 9-406 deals with assignments of promissory notes and generally, although not always, overrides a restriction that "prohibits, restricts, or requires the consent of the . . . person obligated on the promissory note to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in the . . . promissory note . . . ." DEL. CODE ANN. tit. 6, § 9-406(d). Significantly, section 9-406(d) does not invalidate the anti-assignment clauses in the Notes and Loan Agreements here because of subsection (e), which provides: "Subsection (d) does not apply to the sale of a payment intangible or promissory note, other than a sale pursuant to a disposition [under sections not applicable here]." *Id.* § 9-406(e).

The Court agrees with the Bankruptcy Court's well-reasoned conclusion that section 9-408 applies only to transactions involving the grant or transfer of a security interest in a promissory note, not an outright sale of a promissory note. The Court will not reach Debtors'

13

alternative argument that Contrarian also lacks standing to enforce its UCC contentions (even if such contentions had merit).

## V. CONCLUSION

For the foregoing reasons, the Decision will be affirmed. An appropriate Order follows.

September 11, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT